21-10021, Glenn v. Myers, et al. First up, we have Mr. Riley. Presiding Judge Pryor, Judge Branch, Judge Hill, may it please the Court. This is another civil case concerning an incident at Holman. We have three issues for reversal. However, all the issues are not equal. Primarily, we are here to ask the Court to reverse the summary judgment in favor of three of the remaining defendants. The rest of the defendants we have dismissed. Just as equally important, we ask the Court to evaluate whether this case should have been dismissed for lack of federal jurisdiction midway through discovery when all the federal claims were dismissed voluntarily. Finally, and this is one of the lesser issues in my mind, to the extent that the Court believes that the Fourth Amendment complaint was not sufficient, we argue that the Court should reverse the judge's decision to not allow the Fifth Amendment complaint, which clarified theories of negligence and added more facts. Your Honor, this is an Alabama negligence case. We have contractors who have contracted with the State of Alabama to provide medical care and psychological care to inmates at Holman who have breached the standard of care and caused the suicide death of young Roderick Bolton. Your Honors, we are well aware that suicide cases are very difficult and perhaps they should be. But in this case, young Roderick did everything that he was supposed to do under the prison's policies and procedures for getting help and he was not believed when he said, I'm suicidal and I'm going to commit suicide. Young Roderick is not alone. Alabama has a serious problem with suicides in prisons. We have cited expensively to Judge Myron Thompson's over 100-page order after a bench trial and findings of fact on these very issues. What is causing all the suicides? Alabama has twice the suicide rate of any other state and we've incorporated those findings into our summary judgment response and they were rejected by the court. Members of the court, we have an Alabama state law claim of negligence that has been modified by the Alabama Medical Liability Acts. The Alabama Medical Liability Acts did not create a cause of action. It just changed the common law cause of action for negligence, which we sometimes call malpractice when we're dealing with medical defendants. The legislature trusted the medical industry to set the standard of care in these cases and the analysis is pretty simple. Under 6-5-548, the plaintiff has the burden of producing expert testimony that the defendants breached the standard of care and that that breach of the standard of care caused the injury or in this case, a death. We produced four experts that MHM, the psychological contractor of the state under a $12 million contract per year, that Corizon who provides the medical care, and that Sheila Brown, an employee of the ADOC, all breached the standard of care. Can I ask you a question about that? You've put forth expert testimony as you've just described, but Ms. Brown possesses a BS in social work and a minor in psychology, so I'm just trying to grapple with how do we ... How did your experts demonstrate what duty of care she owes? Your Honor, we have alternating theories here. We've argued that the claims against Ms. Brown are controlled by the Alabama Medical Liability Act. There's been an argument that that's not true and we say that that really doesn't matter because under the common law, expert testimony is sufficient to create an issue of fact on the issue of breach. To answer your question ... But you've got to show that she's ... How is she going to meet the standard of care? How can she be expected to meet any standard of care that a medical professional would have to meet? We're not suggesting that she should meet the standard of care of a psychiatrist. Her job, as best as I can understand it, and again, her job has been tainted by the failure of MHM to properly train her for what she's supposed to do, but her job is what we best can understand it was, is that folks that needed to talk, that had mental health concerns that are suicidal, the correctional officers would bring them to her and she would decide whether they should be put into a crisis cell or not, or whether their referral should be made to MHM. In this case, your honor, we produced experts that have either supervised such officers or have actually done the work themselves. That's sufficient under the Alabama Medical Liability Act. Also, Ms. Brown herself testified what her job was and what she should do under the standard of care, and she testified that if she knew that Roderick was suicidal or Roderick told her that he was suicidal, that she should have put her in a crisis cell. And the Alabama Supreme Court has been very clear that a defendant can testify as to the standard of care, and that is an acceptable mode of proof, even if the plaintiff doesn't produce an expert. So, we've checked all the boxes many times, and we've cited many cases for the proposition that an overqualified expert is sufficient to testify to somebody who is supervised. As I understand your remarks, you agree that Alabama Medical Act controls the cause of action here. Is that right? Your honor, that is our primary argument. We have a backup argument that even if it doesn't apply, it doesn't matter because under Alabama common law, an expert can always testify as to what's foreseeable. Okay, but let's go to this act, because it says who it covers, right? Yes, your honor. It basically says you have medical malpractice common law, but we're now going to take that cause of action, and we're going to put these requirements on it. Some requirements, yes, your honor. Some requirements. And if you go to the statutory language, it says you can sue doctors, nurses, blah, and quote other health care providers. That's a threshold requirement that the person who's being sued is an other health care provider. Is that right? Yes, your honor. That's one way that you can get there. And that's how you try to get there, that she's an other health care provider. She may not be a nurse or a doctor, but she's the department's... She's the care provider. Yes, your honor. She's the care provider who's the screening tool for whether you get to even see MHM. She's the gateway to even getting to MHM care. Under the system that's set up, yes, your honor, that's correct. Yeah, I mean, this is what we're dealing with, this system. MHM doesn't do anything until she authorizes them to interact, so to speak. I think we need to distinguish what they're supposed to do and what they did do. But yes, your honor, under the system that was there, that is correct. Okay. All right. So I'm trying to see, is she an other health care provider? And I look at the statutory definition, and she doesn't fall within the plain language of the other health care provider statutory definition, unless you go to the Alabama case law that expands the deposition. Have I got that right? Yes, your honor. I think that's fair. The other health care provider has to be somebody employed by the doctor, nurse, blah, blah, blah. Right? Not necessarily. I mean, she's employed- Well, or used. But the Alabama case law says we're going to broadly say employed by and say used by. Right. There are doctors and nurses that are employed by the state, and there are obviously medical providers as well. So, your honor, we do a lot of medical malpractice cases at our firm. This is the first time that a defendant has come as a basis for summary judgment and said, well, the act doesn't apply. Usually they're scrambling to get the act to apply. Right. Well, she's an employee of the department, not of the two medical providers. Yes, your honor. Okay. And so, the question is, is she, within the statutory language, as expanded by the Alabama Supreme Court in the Anderson and the Wal-Mart cases you talked, and they say, well, we're going to make it be a laboratory, you know, because the doctor's using the laboratory. We're going to make it be, what was the other, a pharmacist too, the doctor's using that. The problem I'm having here, and I just need you to try to answer it, is how she's even covered by this act, because she's not being employed by, or broadly used by, or any way used by a healthcare provider. She's not a medical person. She's a social worker. So, how do I get there? Help me. Your honor, MHM is using her. I mean, she's, like you said, she's the gatekeeper. She's the one that determines who gets the mental health care, or who doesn't. She's the end-all, be-all. So, the person that's employing her is MHM, or using her, is what you're saying. I wouldn't get so caught up in who is the actual technical employer. Yeah, I agree, because it says used by the healthcare professional. Yes, your honor. So, the healthcare professional is MHM, and they are using her. And the state, to the extent the state has set up this system, she is the gatekeeper of the medical care. That's who, and I think Sergeant Fountain testified, he thought she was employed by MHM, because of the duties that she provides. She talks in her deposition about her treating patients. She calls them patients. So, but again, your honor, I wouldn't get too caught up in whether the act applies to her or not, because it really doesn't matter. It really doesn't matter, because under the common law standards, she has undertaken by her employment to do these things, and by her own words, she has violated her own guidelines for how she does her own job. Your honors, I'd like to talk really briefly about the fact that this case, we dismissed the federal claims early on. It's just general practice in Alabama courts. Even when motions for summary judgment are filed, district courts regularly will dismiss state law claims for lack of jurisdiction, even after summary judgment is decided. Let me go back to your claims for a minute, before you sit down. So, I understand there's also a claim for the Alabama common law tort of wantonness. Yes, your honor. And as I read the complaint, it doesn't look like that is under the umbrella of AMLA. Is that correct? It can be. Yes, your honor. The Alabama medical liability— But is it? What's your position? I mean, is it, are you making an independent common law claim there, or are you making a claim under the statute? Well, my overall point, your honor, is that you make the claim, the common law claim, and the question is whether does the act apply to that claim or not. So, there is no really such thing as an AMLA claim. And so, in other words, you can sue somebody for respondeat superior. If it's dealing with a health care provider, then that is governed by the act. So, yes, wantonness— But let's suppose we disagree with you that she's a health care provider or being used by a health care provider. Yes, your honor. Do you have an independent claim for wantonness? Sure. Sure. Count four of the complaints. And what is the, okay, and then what is the evidence of, the standard is pretty high there, right? So, has to be reckless indifference to consequences, consciously and intentionally did some wrongful act or omitted some known duty. So, tell me, tell me how you meet that. So, think deliberate indifference. The Eleventh Circuit has held that they're very, very similar standards. And so, you consciously know that somebody is at risk, and you disregard that risk. And so, we've got a situation where she is the decider as to whether somebody is in a crisis cell or not. She is brought an inmate, Mr. Bolton, by Sergeant Fountain. Mr. Bolton has told not only Sergeant Fountain but the guard before that he's suicidal. Sergeant Fountain believes him. I understand.  I understand the facts. And my understanding is that the claim is based on the fact that she could have asked the question whether he was suicidal, but she did not. She had to have known. Sergeant Fountain told her that he, that Bolton told him that he was suicidal. She testified that Fountain told him that Bolton told him that he was suicidal. That's her job is to ask this question. And according to her, she never asked it, which is really unbelievable. Does she say why she didn't ask it or what she was thinking, sir? No, Your Honor. But she did say that if she knew that he even suggested that he was suicidal, that she would have put him in a crisis cell. And so, this is classic deliberate indifference. Deliberate indifference is that you are ... Was it because she first said Fountain didn't tell her what Bolton said? Is that why she said she never asked the question? But then she finally said, well, maybe Fountain did tell her? Your Honor, I ... Tell me how that evidence played out. I can't recall exactly. I remember the deposition being very ... She said that she had to decide whether to believe this inmate or not. And that is totally beyond the standard of care. That's not what anybody does in this situation. You're not a decider of whether somebody's believable or not. That in and of itself shows deliberate indifference and recklessness and wantonness. Okay. Thank you. Thank you. You've reserved your rebuttal time because you were answering the court's questions. Mr. Gibson? Jake Gibson on behalf of Appley MHM. May it please the Court. Since my time is short, I want to cut straight to what's the core issue as it relates to MHM. There is no evidence anywhere in the record that there was a connection between MHM and the decedent in this case. He was never on MHM's caseload. He was never referred to MHM. And there was no MHM provider that ever saw him. After 12 months of discovery and after MHM filing an earlier motion for summary judgment, the plaintiff was unable to find any evidence of a connection between MHM and the decedent. As a result of that lack of connection, MHM did not owe a duty in this case. And that's true for two reasons. The first is what the district court addressed, which is under the Alabama Medical Liability Act, before there's a duty to provide care, there must be a patient-provider relationship. And there's simply no facts in the record here under which a patient-provider relationship would have arisen. I know my opponent has referenced expert testimony and the fact that they have testimony about breaches in the standard of care. But it's clear under Alabama law that you don't get to that question until you have a patient-provider relationship, and that's something for the court to decide. And so, for that reason alone, MHM did not owe a duty to the decedent in this case. In addition, under Alabama law, because we're dealing with a suicide, there are special rules that apply before there is a duty to prevent an individual's death at his own hands. And Alabama law has a special foreseeability test that requires that the defendant be aware of particular facts that would make that defendant foresee that that individual is going to commit suicide. And here, because MHM never saw the decedent, MHM had no basis on which it could have foreseen that he would commit suicide. So for either of those reasons, MHM did not owe a duty in this case, and the district court's grant of summary judgment should be affirmed. I would also like to address one thing that my opponent mentioned as well, which was with respect to Ms. Brown. Ms. Brown was an employee of the state, and there's an affidavit in the record. It was submitted at summary judgment. It's document 121-7, and there's clear testimony in there that's uncontroverted that MHM had no right to control Ms. Brown. MHM had no right to hire or fire her. MHM had no right. Did MHM use her services under that definition of other health care provider that we talked about? No, Your Honor. I don't think so. Ms. Brown reported to the warden. MHM had its own supervisory staff. Ms. Brown had her own job duties, and I know my co-counsel who represents the state will address some of this, but Ms. Brown was responsible for things such as group treatment. She was responsible for the Prison Rape Elimination Act compliance, and she was also responsible for triaging inmates like Mr. Bolton who were classified as MH0 and were not on MHM's caseload. And so she could then refer that inmate to MHM if she thought it was appropriate, but MHM was not using Ms. Brown to do anything. It was the state of Alabama that was using Ms. Brown, and they exclusively controlled Ms. Brown. And I think my opponent has conceded in the briefing that MHM did not control Ms. Brown, and therefore MHM cannot be liable vicariously or through a negligent training or hiring supervision claim. And so if there are no other questions for the Court, I will cede the rest of my time to my colleagues who represent the other appellees. Thank you. Thank you. Thank you. Next up is counsel for Khorizan. May it please the Court, I am Phil Piggott for Khorizan, LLC. In 2015, Khorizan had the contract to provide health care related services to Alabama State incarcerated inmates. It did not have the mental health care contract. That contract was held by MHM. When this lawsuit was first filed, there were deliberate indifference federal claims and Khorizan, as well as four Khorizan nurses, Nurse Brown, Nurse Dorch, Nurse Broich, and Nurse Weaver. And the complaint stated that all four of those nurses knew that Mr. Bolton was suicidal and were told that he was suicidal. And that information in the complaint, or in the five amended complaints, kept saying that those nurses knew that Mr. Bolton was suicidal. The facts came out that Lydia Brown, who was an LPN, was not even working that day. Nurse Dorch did not come on service until after Mr. Bolton had committed suicide. Nurse Broich did do pill call, but he testified in his deposition that he never saw Mr. Bolton at any time. And the only nurse who had any interaction with Mr. Bolton was Nurse Weaver. And she did a pill call earlier on the day. And a pill call is a chart where the officers bring the inmates into the health care unit and say, will you take his vital signs and make sure that he's okay. The vital signs were normal. He made no statement to Nurse Weaver. And Nurse Weaver wrote at the top of the body chart, no statement. The Sergeant Fountain was the individual who brought Mr. Bolton to see Ms. Weaver and his deposition was taken. And he made no statement whatsoever in his deposition that he told Ms. Weaver that Mr. Bolton was suicidal. So Ms. Weaver, LPN, could have had no foreseeability. And she is the only Corizon employee that had any interaction whatsoever with Mr. Bolton. And the district court judge said that the standard in Alabama is foreseeability and there was no way that any Corizon employee could have been, or had any foreseeability that Mr. Bolton would commit suicide. And none of these defendants, well, I guess the ones that weren't there, but the ones who were there, did they have any obligation to check on Mr. Bolton at any time? None whatsoever, Your Honor. And that's the only claim against Corizon. And Corizon asked that you affirm the position of the district court in this matter. Thank you. Thank you. Mr. Boudry. Thank you, Your Honor. May it please the court, Barrett Boudry for Appalachia Brown. This court can affirm the decision below as to Ms. Brown on the well-reasoned decision given by the district court. Ms. Brown was not a health care provider under the Alabama Medical Liability Act. And the plaintiffs know how to bring a common law negligence claim. They did so in count four of the Fourth Amendment complaint against the individual ADOC defendants. But in count three, the one that was against Ms. Brown, they clearly pled under the Alabama Medical Liability Act, and the district court correctly found that Ms. Brown just does not fall within that. The district court also correctly found that there was no genuine dispute of material facts when it came to the wantonness claim. This court can also affirm on an alternative ground that was presented to the district court but not reached by it, and that is Ms. Brown's state agent immunity. Under Alabama law, as set forth by the Alabama Supreme Court in Cranman, a state agent quote, shall be immune from suit if she is performing a discretionary function within one of the Cranman categories. And there are two exceptions to that, and the burden is on the plaintiff to show them. The first is that if the agent acted willfully, maliciously, in bad faith, or fraudulently, Ms. Glenn has expressly disclaimed reliance on this factor. This is on page 31 of her reply brief. And so the other exception is a state agent shall not be immune when quote, the Constitution or laws of the United States require otherwise. I'll come back to that language in just a moment, but I want to turn now to Ms. Brown's burden of meeting the state agent immunity. In her summary judgment motion, she attached her deposition in which she described very much in detail what her job responsibilities were. And based on that, it is clear that she fits within at least three of the Cranman categories. Those are first, she was exercising judgment in the administration of the department. Second, she was discharging duties imposed on the department by statute. And third, she was counseling persons of an unsound mind. With regard to this last category, this is important because even if she were a medical provider, which she is not, but even if she were, Ms. Glenn argues that there's a standard rule that psychiatrists and medical providers are excluded from Cranman, from the Cranman categories. And that is not true. In Ex parte Kozlowski, which is a case we did not cite in our briefs, but it's found at 186 Southern 3rd 445, the Alabama Supreme Court found that a psychiatrist who had treated a patient suffering from suicidal ideations, the psychiatrist said that he was okay, released him from the hospital, and he ended up dying likely of suicide. The Supreme Court said that he was exercising his discretion by counseling persons of an unsound mind, and so therefore was entitled to state agent immunity. But all medical personnel are exercising discretion, so do you tell me all doctors and everybody that works at the prison has state agent immunity? No, Your Honor. Okay. They can be sued, right? Yes, Your Honor. Okay. It is the specific Cranman category that is, quote, for counseling persons of an unsound mind. Okay. So that is not all doctors, but it does include sometimes psychiatrists. Okay. So you would agree with me that if the person were a other health care provider, all this wouldn't matter. They wouldn't have state agent immunity. No, Your Honor. I don't agree with that. Okay. So even if you're able to be sued under the medical act, you still get immunity? Yes, Your Honor. If you work for the state and have discretion? If you work for the state and you're a state agent and fall within one of the Cranman categories, and here she falls within three of the Cranman categories, but one of which is for counseling persons of an unsound mind. Because I mean, this works also in expertise. How is she counseling? Because she's not counseling. She's just making a gateway determination whether you get medical care. She's not counseling. Well, Your Honor, part of her job is to provide counseling and she is determining whether to refer. Okay. I'm going to take it then how you describe it. So help me with this. You agree the state of Alabama has to provide medical, mental health care, right? Yes, I agree with that. Okay. So you set up this gateway person. You agree that she decides whether they get on MHM's caseload, right? In very certain instances. There's the initial. In this instance, she decided whether he went to their caseload. She can, yes, Your Honor. She can refer them to MHM if she chooses. Right. So in this case, she chose not to, correct? Yes, Your Honor. And so she decided whether he got mental health care at this point in time, right? I'm just trying to tease this out. She decided whether to refer him for further mental health care, I would agree with that. Right. And so you've got the state. They have this duty to provide mental health care. I'm just trying to see what I, how this would work. And so the state's got this duty, but they put in this person that says, well, you don't get to get it unless she agrees that she's referred. You agree that he doesn't get on MHM caseload. No interaction, nothing unless she refers him, correct? With regard to this specific instance. Yes, with regard. But there are other. Yeah. All we're talking about this instance. Well, I think the broader context is important because there are many other ways that he could have been referred to MHM and gotten on the caseload. Okay, but that's not what happened here. He went to one way he could have gotten on the caseload. He tried to get on MHM caseload. He tried to get help, right? She decided he didn't, he wasn't suicidal, right? Yes, Your Honor. And she, she decided that he had said that he was suicidal because like many inmates, they know that's him. He's having a bad day. I got all that business. It doesn't matter why he says he was or he wasn't or she disbelieved it and said that's just a bad day. He's just mad. It's not really mental health. What I'm trying to see is whether the act applies here because I think he's got a problem on oneness. So I'm trying to see is there any way he can get her under that act? Yes, Your Honor. Okay, because the Alabama Supreme Court has been pretty broad about how they do that and what's concerning to me is that when you give her the duties, medical duties, you've got a duty of mental health care. You delegate to her. She decides whether to get on the caseload or not. Could she reasonably be construed as a health care professional in this particular situation given the nature of the duties you gave to her? I agree normally a social worker is not going to be a mental health care professional, but you look at the facts here. Did she, they in effect make her another health care professional by making her these job duties, counseling the person, discretion, exercising judgment, all about whether he gets to a crisis cell. Yes, Your Honor. I think two answers. The first is no, she's not a health care provider. She's not like a psychiatrist. She's not like a... I got that. Obviously we know that. Just Branch started with that. She's a social worker. She's a whatever BS is in. I'm talking about the conduct of the state of Alabama here. They have a legal duty to provide mental health care, right? Yes, Your Honor. And she decides he didn't need it that day. That's what she decided. He didn't need it. She evaluated him. I'll take your three discretionary, your three sovereign immunity factors you're going to use to say she, okay, she gets immunity. I'll actually take them because they show she's got exercising judgment. She's counseling him. That's medical counseling, kind of counseling, right? What kind of counseling was she doing? Your Honor, our argument is... Stop there. What? Don't go back to your argument. I'm doing the facts. How is she counseling him? You say she's immune because she's counseling him. What is she counseling him about? We're saying that even if she is a medical provider, even if she is providing counseling, she is immune. Yeah, I got that, but I'm trying to decide whether she's a health care provider to begin with. I'll get to sovereign immunity. The district court didn't address that. I'm not sure I want to get into that. Just assume, I'm only speaking for myself. Yes, Your Honor. I rarely am going to get into all that without the district court looking at it first. Okay, you just started, but the district court never addressed it, right? District court acknowledged that we had made the argument, but did not decide that. No, because they said there wasn't any liability, but I'm trying to get you to see that there's possibly a very close issue whether she's a health care provider here. How can she not be a health care provider when they've delegated to her the duty of minimal health referral, whether you get to go into the system or not? How can she not be some minimum level health care provider? Because minimal level counseling is not health care provider. The health care statute, you know, looks at doctors, looks at dentists, looks at- She was doing triage, right? Yes, she was determining whether someone needed health care. Okay, she was like in the emergency room doing the triage, deciding whether you get to go get treatment. I wouldn't, I don't think that's quite a fair analogy because those are nurses, those are medical professionals here, and it's a different, it's a different responsibility. But she can't get it, he can get no treatment unless she says go to MHM. She's the person that day at that time that made the decision as to whether he needed or didn't need treatment, is that correct? That is a crisis. Yes, ma'am. I agree with that. Okay, I'm going to stop. So you agree she's the person that day that held the keys to whether he got mental health care or not? I agree with that. But even saying that, even if she were a health care provider under AMLA, that simply means that she is entitled to state agent immunity. Well, that's another question, I'm just, this court- I understand, but this is a different way to resolve to a firm on the ground. But shouldn't we send that back to the district court and say she's a health care provider? It is a pure question of law as to whether she is entitled to state agent immunity. Thank you, you've answered my questions and I appreciate it. You told us you were going to get back to the when the United States Constitution requires otherwise. Would you just briefly explain what that is? Yes, Your Honor, and two very brief points on that. The first is that the language is that the state agent is not immune when the laws of the United States or the Constitution require otherwise. That's important because here Ms. Glenn has expressly dismissed her 1983 claims against Ms. Brown. So there is no law that requires the abrogation of immunity. Does there have to be a claim in the case or would the Constitution require otherwise if, for example, Ms. Brown was deliberately indifferent under the 8th Amendment? Yes, Your Honor. I think you need the claim because that's the purpose of 1983 pursuant to the 14th Amendment is to abrogate state immunity. But even if that were not true, then you would get to the deliberate indifference question and the district court was right on the wantonness claim, which is related, that there is simply no information in the record to suggest that Ms. Brown subjectively knew that Ms. Yeah, I understand your argument on that. Thank you. Thank you, Your Honor. Unless there are further questions, we ask the court to affirm. Thank you. Mr. Riley? Your Honors, I'm not going to address Corison unless you have specific questions. I'm going to rest with our arguments in our brief that show that those arguments are incorrect. I have arguments about MHM, and I want to follow up on a couple of issues that Judge Hull and counsel for Ms. Brown addressed. But first, I'd like to talk about MHM. This notion that there's no patient relationship is incorrect. The Alabama Supreme Court has basically said that when claims under the AMLA, and there's no dispute here that the claims against MHM are based on the AMLA, they're controlled by the AMLA, that whether that healthcare provider breached the standard of care is whether a healthcare provider owed a duty to another as a patient is controlled by expert testimony. That is the Wilson case and the Bozeman case that we've cited. And that only makes sense because the legislature trusted the medical industry to testify as to not only what the duty is, what the standard of care is, but to whom. And that only makes sense. And so, the notion that we have to have some kind of, that has to be classified as a patient under the contract is incorrect. As long as our experts say that MHM owed a duty to this person, then that is enough to get past summary judgment. Now, they can produce an expert that says, no, that's not right. That's not the standard of care. How do you owe a duty to somebody you've never seen? Nobody even walked in your medical practice. Very easy, Your Honor. MHM undertook to provide comprehensive mental health care. Comprehensive mental health care. And so, it's just a pure issue of contract law that two contractual parties can contract with each other to provide duties to third parties. Alabama law is very clear on this, that if there's a third party that was within the can sue for a breach of that negligent, negligent breach of that contractual duty. And that's exactly what's at issue here. But by your argument, if an ambulance company had a contract with a hospital to provide ambulance services and nobody ever called the ambulance, there would be no duty of care that ever arose on the part of the ambulance, ambulance workers. How do you, back to Judge Hull's question, if MHM never saw Mr. Bolton, how in the world does a duty of care arise? Well, Your Honor, I'd like to dig down into Judge Thompson's findings. Judge Thompson found that MHM was not using the proper assessment tool when prisoners threaten or engage self-harm. That Judge Thompson found that most of the people that are committed suicide are never on MHM's list. So MHM cannot take $12 million from the state of Alabama, have a poor tool. But Judge Thompson was in a different case. Yes, Your Honor. Yes, Your Honor. Absolutely. But, Judge Thompson made findings of fact after a long jury trial. And our law is clear that on summary judgment, this court, Judge Bieberstadt, can consider reports, I mean, this is classic 803, is it 6 or 4, I can't ever remember, but I think it's 6, can consider investigative reports and findings of fact on investigations. And if we can do that for an administrative agency investigation, we surely ought to be able to do it for Judge Thompson. Also, the summary judgment standard allows ... But when I look at that Judge Thompson decision, which I will, I imagine everybody he's talking about there is somebody that MHM had some minimum interaction with. If I could look at his fact findings, someone's always referred to MHM, but they didn't do anything. Someone's, you know, in all candor, when I go look at it, I'm going to see that he's dealing with people who interacted with MHM. Is that correct, or do you know? I disagree, Your Honor. Judge Thompson was very clear that most of the suicides are people that aren't on MHM's list, and he was very critical of that fact. And he was very critical ... That's what I mean, they're on their list. No, not on the list. Not on the list. Half of them were not on the list. Not on the list at all, never saw it, MHM. Right. And he's very critical of that, and he said that's part of the problem. MHM can't comprehensively say, State of Alabama, I've got it. I've got the mental health care, but then not do the things that the standard of care requires to screen out and find these people. And again, that's only part of our issue. The second issue is, is that MHM, under the contract, had a duty to teach, train, and screen the ADOC employees that were doing the job that Ms. Brown was doing. Judge Thompson found that at interdisciplinary meetings, MHM staff, and this is meetings with ADOC employees like Ms. Brown, staff discussed calling their bluff and taking the gamble on prisoners who threatened to commit suicide, because prisoners who are claiming suicidality and self-harm tendencies are, in fact, malingering or seeking secondary gains such as getting in a segregation cell or getting out of a segregation cell. Here's another finding. MHM is still not using the assessment tool prisoners, when prisoners threaten or engage in self-harm placed in crisis cells. MHM is responsible for policies and practices in intake screening, the referral system, that's what we're talking about here, treatment planning and psychotherapy. MHM employees only use three psychologists. Most work at prisons without a psychologist. Most, and we're talking about ADOC employees here, clinical work is supervised by the respective site administrators who are mostly unlicensed counselors with their own caseloads. This is the problem. MHM said, State of Alabama, I'm going to handle this, and then they didn't do any of the things that were necessary to make sure people like Ms. Brown were trained. Counsel for MHM has said, look, if she's not the employee of MHM, that MHM doesn't have any responsibility to train or supervise her. That's just not true. Under Alabama law, you can negligently train, hire, supervise an independent contractor, especially in situations like this where MHM is undertaken to do it. Your Honors, I ask that the court reverse, and I ask that the court reverse with directions that the case be dismissed for lack of federal jurisdiction so we can refile this case in state court where it belongs. Thank you, Counsel. The final case of the morning is number 20-142.